IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHRISTINE SUSAN GLEASON, individually
and as guardian for S.F., a minor; and S.F.,
individually,

        Plaintiffs,

v.

AMANDA BUNDAGE, in her individual
capacity and as an official of the state of
Oregon; JANE DOE 1, supervisor, individually
and as an official of the state of Oregon; and
FARIBORZ PAKSERESHT, Director of the
Oregon Department of Human Services, in his
official capacity,

        Defendants.

Case No. 6:17-cv-01415-AA
**OPINION AND ORDER**

AIKEN, District Judge:

In this civil rights action, plaintiffs Christine Gleason and her minor child, S.F., allege that defendant officers and employees of the Oregon Department of Human Services ("Oregon DHS") violated their constitutional rights when they questioned S.F. multiple times at S.F.'s school. Defendants sought to question S.F. in connection with their investigation of the biological father of Gleason's younger child, M.H. Although Gleason permitted defendants to

Page 1 – OPINION AND ORDER

question M.H., she refused to consent to defendants questioning S.F. because M.H.'s father is not S.F.'s father, S.F. had no information about the incident in question, and S.F. did not want to talk to Oregon DHS. Plaintiffs allege that Oregon DHS, without Gleason's consent and without a warrant, pulled S.F. out of class multiple times and questioned her.

In this action, plaintiffs assert four claims for relief: (1) a substantive due process claim alleging unlawful interference with familial association; (2) a Fourth Amendment claim alleging unreasonable seizures; (3) a request for injunctive relief, directing Oregon DHS to stop its practice of questioning minor children without parental consent, a warrant, provision of a child advocate, or informing the minor children of the right to have an attorney or advocate present; and (4) a request for declaratory relief, stating that the practice described above is unconstitutional.

Defendants filed a motion to partially dismiss the complaint, arguing that plaintiffs lack standing to assert some of their claims. Defendants request dismissal of plaintiffs' first claim for relief to the extent it rests on allegations that Oregon DHS's questioning of S.F. violated the Fourth Amendment, contending that Gleason lacks standing to challenge any seizure of S.F. on Fourth Amendment grounds. Defendants also seek dismissal of plaintiffs' third and fourth claims for relief, averring that plaintiffs cannot show the requisite threat of future injury necessary to give this court jurisdiction to grant injunctive or declaratory relief.

## STANDARDS

Article III standing is a "jurisdictional prerequisite for the consideration of any federal claim." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008). A challenge to standing is appropriately raised through a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Chandler v. State Farm Mut. Auto.*

*Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiffs, as the party seeking to invoke the subject-matter jurisdiction of the court, have the burden of establishing injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When considering a motion to dismiss for lack of Article III standing, the court may consider evidence outside the pleadings. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

## DISCUSSION

I. *Substantive Due Process Claim*

Plaintiffs' first claim for relief, asserted by Gleason, is for interference with familial association, in violation of Gleason's right to substantive due process under the Fourteenth Amendment. That claim rests in part on allegations related to the legality of the seizure of S.F. during questioning. Plaintiffs concede that this claim is inartfully pleaded and that Gleason lacks standing to assert a Fourth Amendment claim, either on her own behalf or on behalf of S.F. They request leave to amend their first claim for relief to make more definite the nature of their substantive due process claim. Defendants do not oppose that request. Accordingly, defendants' motion to dismiss plaintiffs' first claim for relief is denied and plaintiffs are instead granted leave to make a more definite statement pursuant to Federal Rules of Civil Procedure 12(e) and 15(a)(2).

II. *Request for Injunctive and Declaratory Relief*

Plaintiffs assert their third claim for relief against defendant Fariboz Pakseresht, the Director of Oregon DHS, in his official capacity. Plaintiffs seek an injunction ordering Oregon DHS to stop its "regular of practice . . . in Lane County" of "remov[ing] children from school or interview[ing] them without a warrant, court order or parental consent, and without providing a special advocate or informing children of the right to have an attorney or special advocate

Page 3 – OPINION AND ORDER

present." Am. Compl. ¶ 18. In their fourth claim for relief, plaintiffs seek a declaration that the above-described policy, "on [its] face and as applied[,]" violates the due process clause of the Fourteenth Amendment. *Id.* ¶ 40. Defendants argue that plaintiffs' third and fourth claims must be dismissed because plaintiffs cannot show a threat of future harm sufficient to confer standing to obtain prospective relief in federal court.

The seminal federal case on standing to sue for prospective relief is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the plaintiff sued for damages, injunctive, and declaratory relief, alleging that Los Angeles police officers, during a traffic stop and "without provocation or justification," subjected him to a "chokehold" that rendered him unconscious and damaged his larynx. *Id.* at 98. The plaintiff alleged that it was the city's official policy to use such chokeholds "in innumerable situations where [police officers] are not threatened by the use of any deadly force whatsoever" and that at least fifteen people had died as a result of the chokeholds. *Id.* at 98, 100. He sought a "permanent injunction against the City barring the use of" such chokeholds and a declaration that the use of the chokeholds, "absent the threat of immediate use of deadly force[, wa]s a *per se* violation of various constitutional rights." *Id.* at 95.

The Court held that the plaintiff lacked standing to obtain injunctive or declaratory relief. It explained that the plaintiff's "standing to seek the injunction requested depended upon whether he was likely to suffer future injury by the use of the chokeholds by police officers." *Id.* at 105. The allegation that plaintiff was illegally choked by the police afforded him "standing to claim damages against the individual officers and perhaps against the City," but it did not "establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without

Page 4 – OPINION AND ORDER

any provocation or resistance on his part." *Id.* Furthermore, the Court stated that "[t]he additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties." *Id.*

The Ninth Circuit has explained that, under *Lyons*, "plaintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983)). In evaluating whether such a credible threat of future harm exists, "past exposure to harm is largely irrelevant[.]" *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990). Supreme Court precedent demonstrates that it is particularly difficult to demonstrate the requisite imminent harm when the asserted injury flows from "the affirmative actions of third parties beyond a plaintiff's control." *Lujan*, 504 U.S. at 593 (Blackmun, J., dissenting). "[N]o matter how important the issue or how likely that a similar action will be brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with respect to the party now before it." *Nelson*, 895 F.2d at 1251.

With respect to showing imminent injury, I see no meaningful way to distinguish this case from *Lyons*. Defendants have submitted evidence that DHS has no open or pending cases regarding any individuals connected to S.F. or S.F.'s immediate family and neither seeks to interview S.F. at this time nor anticipates the need to interview her in the future. Howard Decl. ¶¶ 3–5. Plaintiffs do not dispute that evidence. As a result, any speculation that defendants will in the future pull S.F. from her classes to interview her is purely conjectural. Plaintiffs allege that it is a regular practice of Oregon DHS in Lane County to interview children in the way they interviewed S.F. But, just as in *Lyons*, that general allegation falls short of what is necessary to

establish a controversy *between these parties*. Plaintiffs lack standing to seek injunctive and declaratory relief because it is not likely enough that *S.F.* or *Gleason* will be harmed by defendants' policy in the future.

Plaintiffs concede that, in light of the Howard Declaration, they lack standing to seek injunctive relief against defendants in their official capacities. Citing *Ex parte Young*, 209 U.S. 123 (1908), however, they maintain that prospective and declaratory relief against the individual defendants remain available. That argument is misplaced. *Ex parte Young* held that "where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276–77 (1997). But suits brought under the *Ex parte Young* exception to Eleventh Amendment immunity, like all other federal lawsuits, remain subject to Article III's threshold case-or-controversy requirement. Plaintiffs lack standing to seek any prospective injunctive or declaratory relief here because there is an insufficient likelihood that S.F. will be questioned again by Oregon DHS in the challenged manner.

Finally, plaintiffs argue that this Court has jurisdiction over their claims for injunctive and declaratory relief because the controversy presented here is "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. I.C.C.*, 219 U.S. 498, 515 (1911). But the Ninth Circuit, citing *Lyons*, has expressly limited the application of that doctrine (which is an exception to the usual mootness rules) to cases in which "the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *United States v. Max*, 779 F.2d 1415, 1416–17 (9th Cir. 1986).

I am sympathetic to plaintiffs' insistence that they should have access to a prospective remedy. In *Lyons*, Justice Marshall—joined by Justices Brennan, Blackmun, and Stevens—

Page 6 – OPINION AND ORDER

penned a vigorous dissent, in which he argued that the majority's decision was "wholly inconsistent with well established standing principles and clashe[d] with our long-standing conception of the remedial powers of a court and what is necessary to invoke the authority of a court to resolve a particular dispute." *See Lyons*, 461 U.S. at 131 (Marshall, J., dissenting). He went on to state that, "[u]nder the view expressed by the majority today, if the police adopt a policy of 'shoot to kill,' or a policy of shooting one out of ten suspects, the federal courts will be powerless to enjoin its continuation." *Id.* at 137. Were I writing on a blank slate, I likely would resolve defendants' motion differently. But the decision of the *Lyons* majority has been binding precedent for thirty-five years, and I am bound to follow it here.

Because plaintiffs cannot show imminent injury in connection with their prospective claims, they lack standing to assert those claims. Moreover, although plaintiffs correctly note that "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect," this is not a case where additional facts will cure the complaint's jurisdictional deficiencies. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted) (alteration normalized). Accordingly, plaintiffs' third and fourth claims must be dismissed with prejudice.

## CONCLUSION

Defendants' motion to dismiss (doc. 15) is GRANTED IN PART and DENIED IN PART as follows: the motion is denied as to plaintiffs' first claim for relief and granted as to plaintiffs' third and fourth claims for relief. With respect to the first claim for relief, plaintiffs' request for leave to amend to make that claim more definite and certain is granted. Plaintiffs' third and fourth claims for relief are dismissed with prejudice and plaintiffs' request for leave to amend those claims is denied. Defendants' request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 10 day of May 2018.

/s/ Ann Aiken
Ann Aiken
United States District Judge